UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CASE NO.

| | |
|---|---|
| LYNN VERLOOVE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| LIFE INSURANCE COMPANY OF NORTH | ) |
| AMERICA and FMR LLC LONG | ) |
| TERM DISABILITY PLAN | ) |
| Defendants. | ) |

**COMPLAINT**

Introduction

This is an ERISA claim to recover long term disability benefits against the defendants. Defendants unlawfully denied paying long-term-disability benefits despite the findings of a United States Administrative Law Judge that plaintiff met the strict requirements under the Social Security Act ("SSA") disability insurance. Under the SSA, the term "disabled" means a person is incapable of engaging in "any substantial gainful activity" (42 U.S.C. § 423(d) (1) (A)); i.e., the person is entirely precluded from working on a regular basis.

**Parties**

1. Plaintiff is Lynn Verloove ("Ms. Verloove"), an individual having a usual place of residence in Clarksville, Montgomery County, Tennessee, and a former employer of FMR LLC ("Fidelity) of Boston, Suffolk County, Commonwealth of Massachusetts.

2. Defendant is Life Insurance Company of America ("LINA") is a stock insurance company having a usual place of business at 1601 Chestnut Street, Philadelphia, Philadelphia

County, Commonwealth of Pennsylvania. CIGNA Corp. is the ultimate holding company, and company responsible for its insurance subsidiaries including LINA. LINA is a licensed foreign insurer in the Commonwealth of Massachusetts.

3. Defendant is FMR LLC Long Term Disability Plan ("LTD Plan") is an ERISA welfare-benefit plan of which Fidelity is the ERISA Plan Administrator, 245 Summer Street, Boston, Suffolk County, Commonwealth of Massachusetts

### Jurisdiction and Venue

3. This Court has original jurisdiction for claims for benefits arising under 29 U.S.C. § 1132.

4. Venue is proper before this Court, because LINA is engaged in the business of insurance in this Commonwealth by covering employees of this Commonwealth, and the LTD Plan resides in this Commonwealth, and plaintiff formerly worked in this Commonwealth.

### Facts Common to All Counts

5. LINA is a wholly owned subsidiary of CIGNA Holdings, Inc. ("CIGNA"), a Delaware holding company. The ultimate parent of the Company is CIGNA, a Delaware holding company.

6. At all times material hereto, Ms. Verloove had been employed on a full-time basis with Fidelity in its Boston location.

7. Fidelity provides to its employees long-term-disability insurance coverage through a long-term-disability insurance plan that is fully insured by LINA and identified as policy number FLK-980026 in a contract between LINA and Fidelity.

8.     At all times relevant hereto, Ms. Verloove was a beneficiary and participant under the LTD Plan that provided certain benefits to Fidelity employees including Ms. Verloove.

9.     Ms. Verloove is a "participant" in the LTD Plan, as defined by ERISA, 29 U.S.C. § 1002(7).

10.    At all times material hereto, Ms. Verloove has been "totally disabled" within the meaning of the terms of the LTD Plan, and has been entitled under the LTD Plan to be paid long-term-disability benefits, under both the "own occupation" and "any occupation" definitions of the LTD Plan, and she continues to be disabled to date.

11.    Ms. Verloove is disabled from engaging in gainful employment because she suffers from severe forms of osteoarthritis, spondylolisthesis, degenerative disc disease, fibromyalgia, and other medical conditions, all causing chronic pain and limiting mobility.

12.    As a result of severe pain and significant restrictions and limitations on Ms. Verloove's ability to engage in any gainful employment, she left work in and never returned.

13.    Ms. Verloove suffers from constant pain that severely limits and restricts her range of motion that markedly impairs her ability to be gainfully employed in any occupation.

14.    Due to severe and to constant pain, Ms. Verloove' ability to process information and engage in problem solving is impaired.

15.    Ms. Verloove takes a number of medications prescribed by her treating medical doctors that impair her ability to be gainfully employed.

16.    Ms. Verloove has been under the continuous care of medical doctors at all times.

17.    Her treating doctors and other health care providers have repeatedly determined that she is unable to engage in any gainful employment.

16.     Despite being under the continuous care of medical doctors, Ms. Verloove has been unable to return to her prior occupation

17.     As part of the LTD Plan terms, LINA required Ms. Verloove to apply for benefits under the Social Security Act.

18.     In conformity with the LTD Plan terms, Ms. Verloove applied for benefits under the Social Security Act.

19.     Ms. Verloove has been receiving benefits under the Social Security Act ("SSA") disability insurance program.

20.     Under the SSA, the term "disabled" means a person is incapable of engaging in "any substantial gainful activity" (42 U.S.C. § 423(d) (1) (A)); i.e., the person is entirely precluded from working on a regular basis.

21.     The burden is arduous that a person must overcome in order to prove an inability to engage in "any substantial gainful activity." 42 U.S.C. § 423(d) (1) (A) (definition of "disabled" under Social Security disability program).

22.     Ms. Verloove is a military veteran. Ms. Verloove has a Veteran's Administration disability rating of 40%.

23.     LINA has refused to pay and continues to refuse to pay on-going LTD Plan benefits to Ms. Verloove.

24.     LINA is aware that the Social Security Administration awarded benefits to Ms. Verloove

26.     In denying benefits at various times, LINA relied exclusively on medical opinions of persons who never examined Ms. Verloove.

27.     LINA rendered an adverse-benefit-decision on January 30, 2015.

28. Ms. Verloove timely appealed the adverse benefit decisions of LINA, by first sending notice of the appeal and supporting documents on July 24, 2015.

29. To date, LINA has failed to make a decision despite the passage of more than one-year.

30. Ms. Verloove fulfilled all of the requirements for obtaining benefits under the LTD Plan, yet LINA refused to pay on-gong benefits to her and continues to refuse to pay benefits.

31. At all relevant times, LINA has been operating under a financial structural conflict of interest as LINA is liable for benefit payments due to Ms. Verloove, and each payment depletes LINA's assets.

32. The financial conflict of interest influenced LINA's decision making.

33. LINA is a subsidiary of CIGNA.

34. This conflict of interest is exhibited by the history of biased claims administration by LINA and its related companies.

35. Upon information and belief, CIGNA Group Insurance uses the same employees for LINA claims and appeals as indicated in the Statement of Undisputed facts filed in *United States of America ex rel Dawn Barrett v. CIGNA Corporation et al,* USDC- Massachusetts, 03-12382-MLW. See attached EXHIBIT A.

36. On June 20, 2006 the California Department of Insurance issued a report and market conduct examination finding that LINA has improperly denied long-term-disability claims. A copy of the reported is attached as EXHIBIT B.

37. On June 4, 2012 the California Department of Insurance issued a follow-up report about claims handling by LINA that detail how LINA continues to improperly deny long-term-disability claims. A copy of the reported is attached as EXHIBIT C.

38. On May 13, 2013, the Massachusetts Division of Insurance and other state insurance regulators entered into a regulatory settlement agreement ("RSA") with LINA and other subsidiaries of CIGNA Corporation ("CIGNA") regarding its practices relating to handling long-term-disability claims. A copy of the RSA is attached as EXHIBIT D.

39. LINA paid at $250,000 fine to the Commonwealth of Massachusetts in connection with entering into the RSA.

40. Upon information and belief, CIGNA Group Insurance is a d/b/a of CIGNA as it decides the claims of LINA.

41. Because the claims and appeals of LINA are decided by CIGNA Group Insurance, the findings of the California Department of Insurance with respect to LINA are also applicable to LINA.

42. The California Department of Insurance determined that LINA:

a. Failed to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under its insurance policies;

b. Failed to effectuate prompt, fair and equitable settlement of claims in which liability had become reasonably clear;

c. Failed to represent correctly to claimants, pertinent facts or insurance policy provisions relating to coverage at issue;

d. Attempted to settle a claim by making a settlement offer that was unreasonably low; and

e. Failed to include a statement in its claim denial that, if the claimant believes the claim has been wrongfully denied or rejected, he or she may have the matter reviewed by the appropriate State insurance agency/department.

43. Underlying these findings were the facts that LINA:

a. Applied arbitrary deadlines for submission of proof of claim after the notice of claim had been denied. If the proof was not available or received within the designated period then the claim was denied and pushed to the appeal process;

b. Failed to request medical records prior to making a claim determination;

c. Failed to perform any functional testing or peer review of medical records on file while utilizing functional test results as the guidepost for medical information necessary to the entitlement of benefits;

d. Failed to consult with a health care professional who had appropriate training and experience in the field of medicine involved in the medical judgment;

e. Improperly utilized attending physician's statements to support its denial of disability while not clarifying with the attending physician why he/she was indicating continuing disability;

f. Failed to perform a transferable skills analysis and labor market survey to identify alternate occupations appropriate to claimants under an "any occupation" policy;

g. Ignored substantial information that was introduced after the claim denial;

h. Failed to investigate the course and nature of a claimant's disabling condition as it related to the first date missed from work and the end of the waiting period;

i. Assumed that alternate employers could make an accommodation for a claimant, but never provided any documentation to support this assertion;

j. Denied claims based on a "national economy" definition when it was supposed to evaluate a claimant's disability from his/her "own occupation;"

k. Failed to consider the course and nature of an illness prior to denying benefits;

l. Ignored the medical assessments of its own medical health professionals, who determined that the claimants were disabled, and denied benefits;

m. Removed several disabling health conditions from a claimant's history on file prior to requesting an internal health care professional to review claimant's file;

n. Ignored correspondence received after the initial denial that reasonably required a response;

o. Failed to clarify a claimant's restrictions and limitations with the attending physician who was indicating the claimant was disabled; and

p. Failed to provide complete information in the file to the health care expert performing a peer review of the medical file.

44. EXHIBIT B discloses that LINA failed to:

a. obtain, consider or reconcile the complete Social Security Disability Income (SSDI) records relating to an award of SSDI benefits.

b. obtain complete medical records.

c. utilize the claimant's occupational duties as the occupational benchmark for an "own occupation" evaluation.

d. perform Independent Medical Examinations.

e. institute procedures to correct deficiencies relating to the definition of disability.

f. utilize the proper medical specialist to review the medical records.

45. These deficiencies demonstrate that LINA has a history of biased claims administration.

46. Under the RSA the Massachusetts Division of Insurance made

determinations similar to the California Division of Insurance market conduct studies.

47. Under the RSA insurance companies under the control of CIGNA, Corp., agreed with the Massachusetts Division of Insurance and many other state insurance regulators to determine if its insurance subsidiaries owed benefits to claimants by conducting "remediation of certain denied claims" as set forth in detail in EXHIBIT D.

48. A relatively recent Circuit Court of Appeals decision discussing in detail LINA's failure to reconcile SSA decisions and its own contrary determination is set forth in *Raybourne v. Cigna Life Ins. Co. of New York*, 700 F.3d 1076 (7th Cir. 2012).

49. LINA has failed to take active steps to reduce potential bias and to promote the accuracy of its benefit determinations.

50. The LTD Plan granted to LINA the right to have Plaintiff submit to a physical examination.

51. A physical examination, with a full file review, provides an evaluator with more information than a medical file review alone.

52. More information promotes accurate claims assessment.

53. As the California Department of Insurance determined, LINA ignored the consistent discrepancy between its peer reviewers and Plaintiff's treating doctors regarding his condition; ignored the evidence submitted supporting Plaintiff's diagnoses; and ignored substantial evidence submitted after the initial denial from his treating physicians.

54. In doing so, LINA was probably looking at the financial burden of Plaintiff's claim, instead of providing a full and fair review of his claim, which allowed its conflict of interest to dictate its decision to deny to Plaintiff benefits.

55. Given that LINA pays benefits from its own assets and makes claims decisions, each time that LINA denies benefits it saves itself monies.

### Count I

**(Benefits Due From LINA and the LTD Plan**

**Under 29 U.S.C. § 1132)**

56.     Ms. Verloove realleges paragraphs 1 through 55 and incorporates the same by reference as if fully set forth herein again.

57.     This Court must conduct a plenary proceeding in evaluating LINA's decision to deny paying LTD Plan benefits.  LINA failed to exercise discretion by making a timely claims decision after Ms. Verloove appealed a claim denial.

58.     The decision to deny LTD Plan benefits was not supported by substantial evidence, was wrongful and not in compliance with applicable laws.

59.     Having required the plaintiff to apply for disability benefits under the Social Security Act, LINA should be estopped to deny that Ms. Verloove is eligible for benefits under the LTD Plan and LINA should not have the benefit of the Social Security Disability Income "offset" in the future because of its unclean hands.

60.     As a result of LINA's refusal and failure to pay to Ms. Verloove disability benefits provided to her and to those participants who are totally disabled, Ms. Verloove is entitled to relief against LINA to recover benefits due to her under the terms of the LTD Plan and to enforce her rights to benefits under the LTD Plan and to clarify her rights to future benefits under the LTD Plan pursuant to 29 U.S.C. § 1132 (a).

61.     If this Court orders retroactive reinstatement of benefits, this Court may enter appropriate relief under ERISA precluding LINA from utilizing "off sets" against benefits payable to Ms. Verloove, because of LINA material breached the LTD Plan terms.

## Count II

### (Award of Attorneys' Fees and Costs)

62. Ms. Verloove realleges paragraphs 1 through 61 and incorporates the same by reference as if fully set forth herein again.

63. As LINA has unlawfully denied paying LTD Plan benefits, and has caused Ms. Verloove to incur attorneys' fees and costs, and will cause her to incur additional fees and costs, Ms. Verloove is entitled to recover under 29 U.S.C. § 1132 (g), costs of this litigation, including reasonable attorneys' fees and interest at the Massachusetts statutory rate of 12% simple interest per annum on all back due benefits.

WHEREFORE, plaintiff Lynn Verloove demands relief and judgment against the defendants as follows:

1. In an amount of money to be determined by this Court, plus pre-judgment interest, post-judgment interest, costs and reasonable attorneys' fees allowed by statute or otherwise.

2. Injunctive relief declaring the rights and duties of the plaintiff and defendant with respect to past benefits owed to the plaintiff, and future benefits to be paid to the plaintiff.

3. For an order precluding the defendant from using "off sets" in determining retroactive benefits owed to the plaintiff, or in the future because LINA refused to recognize the decision of the United States Social Security Administration.

4. For such other legal or equitable relief as this Court deems just and proper.

LYNN VERLOOVE
By Her Attorney,

*/s/ Jonathan M. Feigenbaum*

_____

Jonathan M. Feigenbaum, Esq.
BBO #54668
184 High Street
Suite 503
Boston, MA 02110
Tel. No. : (617) 357-9700
jonathan@erisaattorneys.com